UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2019

Hamilton International Ltd.,

        Plaintiff,

—v—

Vortic LLC, *et al.*,

        Defendants.

17-CV-5575 (AJN)(OTW)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This litigation concerns allegations that a watch sold by Defendant Vortic LLC ("Vortic"), as well as advertisements for that watch, infringed on Plaintiff Hamilton International Limited's ("Hamilton") trademark. Before the Court is Plaintiff's motion for summary judgment on its infringement, counterfeiting, dilution, and unfair competition claims. Also before the Court is Defendants' motion to strike, Defendants' motion to transfer, and Plaintiff's sealing motion.

For the reasons stated below, all motions are denied.

**I.    BACKGROUND**

Defendant Vortic LLC ("Vortic") is a watchmaker that specializes in restoring antique pocket watches and converting them into wristwatches. Affidavit of Robert Custer ("Custer Aff.") ¶ 8-9, Dkt. No. 101. One of Vortic's watches is called "The Lancaster." It is made with a restored, "Railroad-Era" movement (i.e. internal mechanism), face, and hands from pocket watches produced by the Hamilton Watch Company. *See* Defendant's Counter Statement Pursuant to Rule 56.1 ("Def. Counter 56.1") ¶ 11, Dkt. No. 102; Declaration of Michael Aschen ("Aschen Dec."), Exh. 2, Dkt. No. 84-2. The other parts of the wristwatch are produced by Vortic and the ultimate product is also assembled by Vortic. *Id.* "Hamilton" is visible on both

1

the front and back of the watch. *Id.* In order to produce a Lancaster, Vortic modifies the movement mechanism and must, at least some of the time, use parts from multiple antique Hamilton pocket watches. Aschen Dec., Exh. 3 at 75:7-76:15, 82:3-82:5, Dkt. No. 84-3. Hamilton, which is still in existence, became aware of The Lancaster in July of 2015 and allegedly sent Vortic a cease and desist letter. *See* Def. Counter 56.1 ¶ 34. On July 21, 2017, Hamilton launched this action against Vortic and the company's founder, Robert Custer. Dkt. No. 1.

## II. MOTION FOR SUMMARY JUDGMENT

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential*

2

*Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

### A. Trademark Infringement

A "plaintiff in a trademark infringement action must show that defendant (1) without consent, (2) used in commerce, (3) a reproduction, copy or colorable imitation of plaintiff's registered mark, as part of the sale or distribution of goods or services, and (4) that such a use is likely to cause confusion." *Gruner + Jahr USA Publ. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993) (citing 15 U.S.C. § 1114(1)(a)). The only element that can reasonably be subject to dispute in this case is whether there is a likelihood of confusion.

The Second Circuit applies the landmark, multifactor test from *Polaroid Corp. v. Polarad Electronics Corp.* when determining the likelihood of confusion in trademark cases. *See* 287 F.2d 492 (2d Cir. 1961). This analysis looks to "the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers" as relevant variables. *Id.* at 295. The touchstone when considering the *Polaroid* factors is the existence of "a probability of [consumer] confusion, not a mere possibility." *Streetwise Maps v. VanDam, Inc.*, 159 F.3d 739, 743 (2d Cir. 1998). In other words, "whether numerous ordinary prudent

3

purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark." *Playtex Prods. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004) (quotation omitted).

However, the *Polaroid* factors are not "mechanical" nor are they exhaustive. *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016) (quoting *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000)). As the Second Circuit has cautioned repeatedly, "depending on the complexity of the issues, 'the court may have to take still other variables into account.'" *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Polaroid*, 287 F.2d at 295)). In cases such as this one, involving modified genuine products, the Supreme Court has found whether the defendant adequately disclosed the origins of the product to be dispositive. *See Champion Spark Plug Co. v. Sanders*, 331 U.S. 125 (1947); *Prestonettes, Inc. v. Coty*, 264 U.S. 359 (1924); *see also Nora Bevs., Inc. v. Perrier Grp. of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001) ("Although no one factor is necessarily dispositive, any one factor may prove to be so.").

In *Champion*, the defendant sold repaired and reconditioned used spark plugs that were initially manufactured by the plaintiff. *See* 331 U.S. at 126. The Supreme Court held that the defendant could continue to display the plaintiff's trademark on his sparkplugs, so long as the sparkplugs also had "Repaired" or "Used" conspicuously stamped on them and their packaging indicated that the defendant had done the restoration. *Id.* at 127, 130. The Court explained that in such circumstances, "[f]ull disclosure" was "all the protection to which [the plaintiff] was entitled." *Id.* at 130. Since the sparkplugs were second-hand goods and consumers would naturally expect a used or repaired good to be inferior, conspicuously labeling the goods as used or repaired constituted full disclosure. *Id.* It was otherwise permissible for the goods to retain the Champion trademark even if it means that the defendant benefits from plaintiff's goodwill or

4

"gets some advantage from" plaintiff's mark. *Id.* The Court did caution that it would be possible to imagine a case "where the reconditioning or repair would be so extensive or so basic that it would be a misnomer to call the article by its original name, even if the words 'used' or 'repair' were added." *Id.* at 129. In those circumstances, more disclosure would be required in order to justify continued use of the plaintiff's mark. The sparkplugs in *Champion*, though, were not so modified.

Courts in this Circuit have likewise found the adequacy of disclosure, or lack thereof, to be dispositive when determining the likelihood of confusion caused by a modified genuine product. *See, e.g., H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1022-24 (2d Cir. 1989); *Cartier v. Aaron Faber, Inc.*, 396 F. Supp. 2d 356, 359 (S.D.N.Y. 2005); *Bumble Bee Seafoods, L.L.C. v. UFS Indus., Inc.*, No. 04-cv-2015, 2004 U.S. Dist. LEXIS 13897, at *6-*15 (S.D.N.Y. July 20, 2004); *Eastman Kodak Co. v. Photaz Imports*, 853 F. Supp. 667, 674 (W.D.N.Y. 1993), *aff'd mem.*, 28 F.3d 102 (2d Cir. 1994). These decisions look to *Champion* as a substitute or crucial supplemental factor to a traditional *Polaroid* likelihood of confusion analysis. "Full disclosure" thus matters if it prevents "numerous ordinary prudent purchasers" from being "misled or confused as to the source of the product." *Champion*, 331 U.S. at 130; *Playtex Prods.*, 390 F.3d at 161.

In determining the likelihood of confusion, the Court will therefore give strong weight to the "full disclosure" factor, while also considering the traditional *Polaroid* variables it finds to be applicable. *See Int'l Info. Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016) ("[C]ases may certainly arise where a factor is irrelevant to the facts at hand.") (quoting *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995)). Doing so, the Court concludes that there is a genuine question of material fact as to whether consumers are likely to be confused by advertisements for The Lancaster or The Lancaster itself.

1. *Champion* **Disclosure Analysis**

a. **Advertisements**

There are three advertisements at issue. The first comes from Vortic's website. *See* Aschen Declaration, Exh. 2, Dkt. No. 84-2. It states in large bold letters, "The Lancaster" and "American Artisan Series." In smaller print, the ad explains that the movement, dial, and hands of the watch "started out their life in a Railroad-Era pocket watch made by the Hamilton Watch Company." *Id.* The ad then gives some additional history on Hamilton before explaining that Vortic uses the parts to build "a completely custom watch." The phrase "Hamilton Watch Co." is visible on a picture of a watch component. The ad copy itself gives an accurate explanation as to how Vortic obtains its parts for The Lancaster and how it builds the watch. Applying *Champion*, a reasonable factfinder could conclude that "full disclosure" as to the source of the product was achieved. *See Prestonettes*, 264 U.S. at 369 (not infringement to "to say that the trade-marked product is a constituent in the article now offered as new and changed.").

Vortic also created an advertisement that appears to have been in print. *See* Haller Declaration, Exh. 2, Dkt. No. 85-2; Custer Declaration, Exh. 1, Dkt. No. 101. "Vortic" is in large bold print, along with the company logo. The ad states: "Each piece is custom fabricated using railroad era, American made pocket watch movements to create timeless, one-of-a-kind wristwatches." *Id.* It implores the reader "talk to a watchmaker at Vortic today." *Id.* The ad also features a picture of both the watch's front and back. In type smaller than the ad copy, "Hamilton" is visible on the watch face. This ad is largely similar to the one above. A reasonable finder of fact could conclude that the ad sufficiently conveys that the watches are produced by "watchmakers at Vortic" and that they use old Hamilton watches only as a "source of railroad era, American made pocket watch movements." A reasonable factfinder that so concluded, could likewise find that the ad is unlikely to cause consumer confusion. *See*

6

*Prestonettes*, 264 U.S. at 369; *see also Bumble Bee Seafoods, L.L.C. v. UFS Indus., Inc.*, No. 04-cv-2015, 2004 U.S. Dist. LEXIS 13897 (S.D.N.Y. July 20, 2004) (label accurately describing product as "Made With Bumble Bee Tuna" did not infringe on Bumble Bee Tuna's trademark).

Plaintiff also alleges that a Vortic tweet about The Lancaster infringes on its mark. *See* Aschen Declaration, Exh. 3, Dkt. No. 84-3 at 32. The tweet states "A #Hamilton #Railway #Special in our nickel plated #3Dprinted #StainlessSteel #AmericanArt." There is a picture of the watch, with the Hamilton mark in smaller print. Like the two ads above, consistent with *Champion*, a reasonable factfinder could conclude that the obvious message of the ad is that Hamilton watch parts are used to produce a watch that is made by Vortic. *See id.* ("*our* . . . #AmericanArt") (emphasis added). *See Prestonettes*, 264 U.S. at 368 ("When the mark is used in a way that does not deceive the public we see no such sanctity in the word as to prevent its being used to tell the truth. It is not taboo.").

Moreover, the fact that the movements may not have been restored to precise factory specifications or were restored with parts from other vintage Hamilton watches does not make the ads deceptive and infringing as a matter of law. Just as the sparkplug consumers in *Champion* would expect lower quality from secondhand sparkplugs, a reasonable factfinder could determine that consumers of restored, historic watches would expect these techniques as well. *See Champion*, 331 U.S. at 129-30; *see also id.* at 129 ("And we would not suppose that one could be enjoined from selling a car whose valves had been reground and whose piston rings had been replaced unless he removed the name Ford or Chevrolet"). What matters is whether a reasonable factfinder could determine that there is "full disclosure" as to the fact that Vortic is producing the watches from old Hamilton components.

**b. The Watch**

7

The use of "Hamilton" on the watch itself could also be infringing. The Court finds, however, that there is at least a genuine dispute of material fact as to whether full disclosure has been made.

Plaintiff has provided numerous photographs of The Lancaster. *See* Aschen Declaration, Exh. 1, Dkt. No. 84-1. The face of the clock has an antique style. The original Hamilton mark is still visible. Even though it is a wristwatch, the large knob characteristic of pocket watches is still attached to the watch. The back of the watch is mostly glass, and the inner workings of the movements are visible, along with "Hamilton Watch Co." and a serial number which is on a movement part. A ring surrounds the glass. On that ring is written "'The Lancaster,'" "Vortic Watch Co.," "American Artisanship," and another serial number.

From the watch's appearance, a reasonable factfinder could determine that full disclosure has been made and that there is not a likelihood of confusion. The watch looks like a pocket watch that has been re-appropriated into being a wristwatch. A reasonable factfinder could determine that the watch looks obviously modified. *See Ford Motor Co. v. Ultra Coachbuilders, Inc.*, Case No. EDCV 00-00243-VAP, 2000 U.S. Dist. LEXIS 20173, at *15-*16 (C.D. Cal. July 11, 2000) (stretch limousine version of Ford automobile did not infringe on Ford's trademark because the modifications were "apparent"). A reasonable factfinder could further determine that the Vortic mark and serial number predominate over uses of "Hamilton." Looking at these aspects of the watch together, a reasonable factfinder could conclude that The Lancaster would present to the ordinary prudent purchaser as a watch made by Vortic that used old Hamilton components. This could be sufficient to satisfy the full disclosure standard.

Plaintiffs may argue that there is no genuine dispute of material fact on the disclosure issue, because it is uncontested that the watch itself does not spell out its relationship to Hamilton. To be sure, even the most defendant-friendly conclusions that a reasonable factfinder

could draw from the physical appearance of the watch would not be the equivalent of a literal disclaimer; but the Supreme Court has never required explicit explanations on the product itself. In *Champion*, the Court allowed the defendant's product to retain the plaintiff's mark as long as "used" or "repaired" was stamped on the sparkplugs, even though there was no requirement that defendant's *own mark* appear on the merchandise. *Champion*, 331 U.S. at 129-30. While any reasonable consumer, viewing the sparkplug in isolation, would have realized that they were restored, they may have very well erroneously attributed defects in the restoration process to Champion. Yet, the Supreme Court found that there was full disclosure for trademark infringement purposes, in part because the packaging would inform consumers that the defendant had performed the restoration. *Id.* at 127, 129. In this case, there has been more extensive modifications and repairs, but more disclosure has arguably been provided; a reasonable factfinder could find that the watch itself effectively communicates that it was made by Vortic with Hamilton components. This would be an even more accurate picture of the product than a consumer would have received from the unpackaged sparkplugs in *Champion*.

Plaintiff also points to cases involving watches and applying *Champion* from the Fifth, Seventh, and Ninth Circuits to support its argument that The Lancaster is infringing as a matter of law. *See Rolex Watch, U.S.A., Inc. v. Michel Co.*, 179 F.3d 704 (9th Cir. 1999); *Rolex Watch USA, Inc. v. Meece*, 158 F.3d 816 (5th Cir. 1998); *Bulova Watch Co. v. Allerton Co.*, 328 F.2d 20 (7th Cir. 1964). *Bulova*, *Meece*, and *Michel* all involved infringement actions where the defendants either altered the cases of watches made by the plaintiffs or placed the plaintiffs' movements into new cases, while still maintaining the plaintiffs' trademarks. All three courts found that the "reconditioning or repair" was so extensive that more thorough explanations would be required to achieve full disclosure. They further found that providing an explanation that would properly explain the origin of those particular watches was infeasible. Accordingly,

they held that the defendants could not use the plaintiffs' trademark on the watches. *See Michel*, 179 F.3d at 710; *Meece*, 158 F.3d at 825; *Bulova*, 328 F.3d at 23-24.

The Court does not read *Bulova*, *Meece*, and *Michel* as suggesting that a watch movement in a new casing can never bear the trademark of the movement manufacturer. Rather, it reads them for the proposition that there was no feasible way to use the movement manufacturer's mark while providing full disclosure *for those specific watches*. For example, the *Bulova* court explained that "the exposed portion of the dial of the cased 6 3/4 x 8 ligne movement is such [that] no appropriate and readable legend could be placed thereon which would satisfy the disclosure requirements the facts and circumstances here demand." *Bulova*, 328 F.3d at 24; *see also Michel*, 179 F.3d at 710 ("Nor would the face of the watch support a more adequate legend"). In this case, a reasonable factfinder could determine that a feasible solution was achieved. Moreover, Plaintiff's interpretation of these cases would impermissibly conflict with *Champion*.

The presence of a genuine dispute of material fact on full disclosure as to both the advertisements and the watch itself strongly weighs against granting summary judgment.

### 2. *Polaroid* Factors

Analysis under the *Polaroid* factors supports this conclusion. *See Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995) ("[I]t is incumbent upon the district judge to engage in a deliberate review of each [*Polaroid*] factor, and, if a factor is inapplicable to a case, to explain why."); *Bumble Bee Seafoods*, 2004 U.S. Dist. LEXIS 13897, at *19-24 (selectively applying *Polaroid* factors). The strength of mark and similarity factors are not relevant in this case, because Defendants admit to using the mark but assert that their use is not confusing. The proximity of the products, bridging the gap, and the quality of the product are all also unhelpful, because application of these factors would penalize defendants who have only lightly modified a

genuine product. Yet, under *Champion*, these are the defendants who have the lowest burden to meet the full disclosure standard. *See Champion*, 331 U.S. at 129.

This leaves actual confusion, the defendant's good faith, and the sophistication of the buyers as relevant *Polaroid* factors. On actual confusion, Plaintiff points primarily to an email that Hamilton's Canadian affiliate received from a potential customer. Aschen Declaration, Exh. 4, 29:13 to 37:23, Dkt. No. 84-4. It states: "my friend is looking for a vintage Hamilton as per attached. Would it be available? If so how much would it be?" Memorandum of Law in Support of Summary Judgment, at 6, Dkt. No. 83. The sender then attaches the second of the three Vortic advertisements discussed above. Defendants object to the admissibility of this email. Assuming that it is admissible, the email is still not determinative for Plaintiff at the summary judgment stage. Drawing all inferences in favor of the Defendant, the email could suggest only that the buyer is in the market for a vintage Hamilton watch and the advertisement gave her the idea. It does not necessarily support the proposition that the buyer thinks that Hamilton made the watch. Other than this email, there is no evidence in the record of actual confusion. There is a genuine dispute of material fact as to this factor.

On good faith, there is also a genuine dispute of material fact. "The *Polaroid* good faith factor 'looks to whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product.'" *Nora Bevs.*, 269 F.3d at 124 (quoting *Lang v. Ret. Living Pub. Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991). This factor has less force in the modified genuine products context, because under *Champion*, a defendant may, under the right circumstances, purposefully use the plaintiff's mark so that their product can benefit from the plaintiff's reputation and goodwill. *Champion*, 331 U.S. at 130. Thus, merely displaying the holder's mark cannot give rise to a presumption of bad faith. Yet, intentionally using a mark to capitalize on *confusion* would.

Given that a reasonable factfinder could determine that Defendants properly gave full disclosure when using the Hamilton mark, there is at least a genuine dispute as to Defendant's good faith as well.

Last is the sophistication of the consumers. As the Second Circuit has explained, "[t]he greater the value of an article the more careful the typical consumer can be expected to be." *McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979). It is undisputed that these watches are expensive. *See* Memorandum of Law in Support of Summary Judgment, at 13, Dkt. No. 83; *see also Swatch Group (U.S.) Inc. v. Movado Corp.*, No. 01 Civ. 0286, 2003 U.S. Dist. LEXIS 6015, at *14 (S.D.N.Y. Apr. 9, 2003) ("The average consumer spending hundreds of dollars on a watch that will be worn for years is likely to give close attention to the type of watch he or she is buying."). Additionally, Plaintiff has raised no other undisputed facts regrading consumer sophistication. This factor weighs against summary judgment.

The Court finds that there are genuine disputes of material fact as to both the presence of full disclosure under *Champion* and as to the applicable *Polaroid* factors. The Court thus denies summary judgment on the trademark infringement claim.

### B. Federal Counterfeiting Claim

In order to prevail on a counterfeiting claim, Plaintiff must show that use of the counterfeit mark is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Since there is at least a genuine dispute of material fact on whether there is a likelihood of confusion, summary judgment is denied for the counterfeiting claim as well.

### C. Dilution Claim

Plaintiff has also moved for summary judgment on both Federal and New York dilution claims. However, the Complaint contains only a New York dilution claim under New York General Business Law § 360-*l*, evidently on a blurring theory. *See* Dkt. No. 1. In order to

succeed on a New York dilution claim, a plaintiff must show a likelihood of dilution. *Deere & Co. v. MTD Prods.*, 41 F.3d 39, 42 (2d Cir. 1994). "To determine the likelihood of dilution by blurring [under New York law], courts consider six factors similar to the *Polaroid* factors." *Lapine v. Seinfeld*, 375 F. App'x 81, 85 (2d Cir. 2010); *see N.Y. Stock Exch., Inc. v. N.Y., N.Y. Hotel, LLC*, 293 F.3d 550, 558 (2d Cir. 2002) (Six factor New York dilution test considers "(i) the similarity of the marks; (ii) the similarity of the products covered; (iii) the sophistication of the consumers; (iv) the existence of predatory intent; (v) the renown of the senior mark; and (vi) the renown of the junior mark"). As discussed above, the *Polaroid* factors do not support summary judgment for the Plaintiff.

Plaintiff's motion for summary judgment on its dilution claim is denied.

### D. Unfair Competition Claims

As Plaintiff acknowledges, the standard for a trademark infringement claim under 15 U.S.C. § 1114(1) is the same as the standard for an unfair competition claim under 15 U.S.C. § 1125(a). *See Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978) (per curiam) ("It is well settled that the crucial issue in an action for trademark infringement or unfair competition is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question"); *Legends Are Forever, Inc. v. Nike, Inc.*, 58 F. Supp. 3d 197, 205-06 (N.D.N.Y. 2014). A New York unfair competition claim is identical to its federal counterpart but adds the requirement that plaintiff must prove bad faith. *See Luxsoma LLC v. Leg Res., Inc.*, 289 F. Supp. 3d 514, 526-27 (S.D.N.Y. 2018). Because the Court denies summary judgment on trademark infringement, it denies summary judgment as to the unfair competition claims as well.

### III. MOTION TO STRIKE DECLARATION OF ANTOINE HALLER

Defendants object to the declaration of Antoine Haller, Dkt. No. 85. Because the Court would reach the same result regardless of whether the declaration is considered, Defendants' motion is denied as moot. *See Callari v. Blackman Plumbing Supply, Inc.*, 988 F. Supp. 2d 261, 293 (E.D.N.Y. 2013); *Fraser v. Fiduciary Trust Co. Int'l*, No. 04-cv-6958, 2009 U.S. Dist. LEXIS 75565, at *3-*4 n.2 (S.D.N.Y. Aug. 25, 2009), *aff'd*, 396 F. App'x 734 (2d Cir. 2010) ("The Court need not strike or otherwise disregard the declarations submitted by Plaintiff and his counsel in order to reach this conclusion. Consequently, Defendants' motion to strike all or part of these declarations is moot.").

## IV.    MOTION TO TRANSFER

After Plaintiff moved for summary judgment, Defendants moved to transfer the case to the District of Colorado under 28 U.S.C. § 1404. This motion is denied.

"While motions to transfer are typically considered at an early stage in a case . . . nothing bars a court from granting a motion to transfer venue at a later stage in a case." *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 271 (D. Conn. 2006). Yet, "[t]he timing of a motion to transfer venue, although not by itself normally dispositive, is relevant." *Commercial Union Ins. Co. v. Emery Air Freight Corp.*, No. 92-cv-6513, 1995 U.S. Dist. LEXIS 5140, at *3 (S.D.N.Y. Apr. 11, 1995) (summarily denying a motion to transfer when plaintiff's direct case had already been submitted in writing during a bench trial).

A district court may transfer a case "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Because there is no dispute among the parties that the District of Colorado would be an appropriate forum for this action, the only question is whether the transfer is in fact warranted. *Tianhai Lace USA, Inc. v. Forever 21, Inc.*, No. 16-cv-5950, 2017 U.S. Dist. LEXIS 168187, at *3 (S.D.N.Y. Sept. 27, 2017). The Court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of

14

convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). "Among the factors to be considered . . . are, *inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quotation omitted). Courts have also considered familiarity with the governing law and judicial economy in making transfer determinations. *See, e.g., CYI, Inc. v. Ja-Ru, Inc.*, 913 F. Supp. 2d 16, 19 (S.D.N.Y. 2012). Additionally, "the party requesting transfer carries the burden of making out a strong case for transfer." *New York Marine* at 114 (quotation omitted) (holding that a "clear and convincing" standard is appropriate when deciding motions to transfer).

While a plaintiff's choice of forum is generally entitled to great weight, "the deference a court gives to the plaintiff's forum choice decreases where the operative facts . . . bear little material connection to the chosen forum." *Tianhai Lace USA*, 2017 U.S. Dist. LEXIS 168187, at *16 (quotation omitted). As discussed below, this litigation has virtually no connection to this District, so this factor weights only mildly against transfer. The convenience of the witnesses favors transfer, as it is undisputed that no witnesses are located near New York while at least one is in Colorado. The location of relevant documents and relative ease of access to sources of proof is largely irrelevant given that discovery is closed in this case. Moving this case to Colorado would obviously increase convenience to Defendants, who are Colorado based. However, it could potentially inconvenience the Plaintiffs, who claim they would obtain new local counsel if the case was moved. This factor mildly favors transfer. The locus of operative facts variable strongly weighs in favor of transfer, as only two potentially infringing watches

were sold to New Yorkers. The sixth factor, the availability to compel the attendance of witnesses, is neutral, as both New York and Colorado appear to be adequate in this regard. The relative means of the parties also favors transfer. The evidence on this point suggests that Defendants have significantly fewer resources than Plaintiff, which is part of a large multinational conglomerate. Since Plaintiff brings some New York state law claims, familiarity with the applicable laws weighs against transfer. Judicial economy weighs very strongly against transfer. If this case is transferred, a new judge would have to invest significant resources to gain familiarity with this action.

Considering the factors, the Court finds that Defendants have not met their burden of making a strong case for transfer. The issue of judicial economy and timeliness of Defendants' motion outweigh everything else. It is very late in the litigation process to change forums and Defendants do not demonstrate an overwhelming need to litigate in Colorado. *See Commercial Union Ins.*, 1995 U.S. Dist. LEXIS 5140, at *3; *United States v. Stamps*, No. 18-cv-1106, 2018 U.S. Dist. LEXIS 195970, at *8-*9 (E.D.N.Y. Nov. 16, 2018) (denying motion to transfer when "lion's share" of discovery had been completed); *cf. Genden v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 621 F. Supp. 780, 783 (N.D. Ill. 1985) (granting motion to transfer case made during discovery when "overwhelming number of witnesses and documents are located" in transferee district). Virtually all of Defendants' arguments, especially those regarding operative facts, could have been made earlier in this litigation. Plaintiff's misconduct during the settlement process with Judge Wang, *see* Dkt. No. 63, does not justify Defendants' delay. And in any event, that process concluded over seven months before the motion was made. In that time, Plaintiff moved for summary judgement. The motion to transfer is denied.

## V.   PLAINTIFF'S SEALING REQUESTS

Plaintiff seeks to make certain redactions in its filings and exhibits. *See* Dkt. No. 76. Its justification is that the material contains "proprietary or trade secret information that has been designated 'Confidential-Attorneys' Eyes Only' by counsel pursuant to the stipulated Protective Order." *Id.* Under *Lugosch v. Pyramid Co.*, a presumption of public access attaches to judicial documents. 435 F.3d 110, 119-20 (2d Cir. 2006). In order to overcome the presumption, there must be "specific, on the record findings." *Id.* at 120 (quotation omitted). "[E]ven if material is properly designated as Confidential or Highly Confidential by a protective order governing discovery, that same material might not overcome the presumption of public access once it becomes a judicial document." *Dodona I, LLC v. Goldman, Sachs & Co.*, 119 F. Supp. 3d 152, 155 (S.D.N.Y. 2015); *see also Newsday LLC v. County of Nassau*, 730 F.3d 156, 166 (2d Cir. 2013) ("[T]he facts necessary to show good cause for a protective order applicable to discovery documents that are not yet implicated in judicial proceedings will not necessarily meet the higher threshold imposed by the First Amendment with respect to judicial documents."). Documents submitted in support or opposition to a motion for summary judgment are judicial documents. *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018). However, Plaintiff has not provided the Court with sufficiently particularized justifications, which would enable the Court to determine whether such specific findings are warranted. Accordingly, Plaintiff's motion to seal is denied.

Within ten business days of the date of this Order, Plaintiff may resubmit its denied redaction request. In addition, Plaintiff shall support its application for redactions and/or sealing with authority and articulated reasoning that is specific to the content that it seeks to keep under seal. If no further application is made within this time frame, the unredacted materials must be filed on the public docket.

## VI. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED, Plaintiff's motion to strike the Haller declaration is DENIED as moot, Plaintiff's motion to transfer is DENIED, and Defendants' motion to seal is DENIED as well, with leave to refile as directed.

A final pre-trial conference in this matter will be scheduled by separate order.

This resolves Dkt. Nos. 77, 95, 97.

Dated: September 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge