UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Hamilton International Ltd.,

                Plaintiff,

—v—

Vortic LLC, *et al.*,

                Defendants.

17-CV-5575 (AJN)(OTW)

MEMORANDUM & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Hamilton International Limited ("Hamilton") moves for reconsideration of the Court's September 30, 2019 Opinion and Order denying summary judgment on its infringement, counterfeiting, dilution, and unfair competition claims against Defendant Vortic LLC ("Vortic") and its owner Defendant Robert Custer. *See* Opinion and Order, Dkt. No. 115 [hereinafter SJ Op.]. For the reasons stated below, the motion is denied.

## I. BACKGROUND

The Court assumes the parties' familiarity with this action. *See* SJ Op. at 1-2. Defendant Vortic specializes in restoring antique pocket watches and converting them into wristwatches. One of their watches, called "The Lancaster" is made with a restored, "Railroad-Era" movement (i.e. internal mechanism), face, and hands from pocket watches originally produced by the Hamilton Watch Company. Hamilton sued Defendants for trademark infringement, counterfeiting, dilution, and unfair competition.

## II. LEGAL STANDARD

"A motion for reconsideration should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct

1

a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted). A movant must typically "point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). These requirements are stringent because "reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Seoul Viosys Co., Ltd. v. P3 Int'l Corp.*, 16-cv-6276, 2018 U.S. Dist. LEXIS 5997, at *4-*5 (S.D.N.Y. Jan. 12, 2018) (quotation omitted). For this reason, "[a] motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *R.F.M.A.S., Inc. v. So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).

## III. DISCUSSION

Plaintiff first contends that the Court's "full disclosure" analysis, based on *Champion Spark Plug Co. v. Sanders*, is somehow incompatible with a traditional likelihood of confusion analysis that examines "whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question." *Playtex Prods. v. Georgia-Pacific Corp.*, 390 F.3d 158, 161 (2d Cir. 2004) (quotation omitted). But there is no conflict between the Supreme Court and Second Circuit here. As the Court explained, it considered the existence of "full disclosure" only to the extent that "it prevents 'numerous ordinary prudent purchasers' from being 'misled or confused as to the source of the product.'" SJ Op. at 5 (*quoting Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 130 (1947); *Playtex Prods.*, 390 F.3d at 161).

Plaintiff argues that, as part of the Court's full disclosure analysis, it improperly "consider[ed] whether [an advertisement] advises consumers 'how Vortic obtains its parts,'" rather than whether the disclosure eliminates the likelihood that a substantial number of consumers will be confused concerning whether the Accused Watches were sponsored by, affiliated with, or connection to Hamilton." Memorandum of Law in Support of the Motion for Reconsideration, Dkt. No. 117-1, at 3. These modes of analysis are not in tension with each other. If an advertisement effectively communicates "how Vortic obtains its parts," then it is unlikely that an appreciable number of consumers would believe that the parts were obtained with sponsorship, affiliation, or connection with Hamilton. As the Opinion noted, the Supreme Court as well as courts in this Circuit have found the adequacy of disclosure, or lack thereof, to be dispositive when determining the likelihood of confusion caused by a modified genuine product. *See, e.g., Champion Spark Plug Co.*, 331 U.S. at 130; *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1022-24 (2d Cir. 1989); *Cartier v. Aaron Faber, Inc.*, 396 F. Supp. 2d 356, 359 (S.D.N.Y. 2005); *Bumble Bee Seafoods, L.L.C. v. UFS Indus., Inc.*, No. 04-cv-2015, 2004 U.S. Dist. LEXIS 13897, at *6-*15 (S.D.N.Y. July 20, 2004); *Eastman Kodak Co. v. Photaz Imports*, 853 F. Supp. 667, 674 (W.D.N.Y. 1993), *aff'd mem.*, 28 F.3d 102 (2d Cir. 1994).

Likewise, Plaintiff objects to the following analysis regarding a Vortic print advertisement: "A reasonable finder of fact could conclude that the ad sufficiently conveys that the watches are produced by 'watchmakers at Vortic' and that they use old Hamilton watches only as a 'source of railroad era, American made pocket watch movements.' A reasonable factfinder that so concluded, could likewise find that the ad is unlikely to cause consumer confusion." SJ Op. at 6. Plaintiff argues that the Court instead should consider "whether the ad communicates to a substantial number of consumers that the watch includes an original,

3

unmodified Hamilton movement that delivers Hamilton quality and reliability, and that Hamilton stands behind the movements." Memorandum of Law in Support of the Motion for Reconsideration, Dkt. No. 117-1, at 5. But Plaintiff again raises a distinction without a difference. If an ad sufficiently conveys that the watches are produced by Vortic and that Vortic uses old Hamilton watches only as a source of parts for their restorations, then it is quite unlikely that a substantial number of consumers will think that the "watch includes an original, unmodified Hamilton movement that delivers Hamilton quality and reliability, and that Hamilton stands behind the movements." *Id.*

Plaintiff additionally claims that "[w]hether or not the ads communicate that the movements were 'restored' is not relevant" to evaluating likelihood of confusion. Memorandum of Law in Support of the Motion for Reconsideration, Dkt. No. 117-1, at 3. But this contention is directly in conflict with the Supreme Court in *Champion*. *See Champion Spark Plug Co.*, 331 U.S. at 130. The entire analysis in that case turned on the fact that the sparkplugs at issue were restored and that there was "full disclosure" of that restoration. *Id.* This Court is not at liberty to disregard binding precedent.

Moreover, just as the fact that "inferiority is expected in most second-hand articles" affected the adequacy of the disclosure in *Champion*, consumer expectations about antique or restored watches are relevant this case. *Id.* at 129. As the Opinion explained, a reasonable factfinder could determine that "[the modification made by Vortic] is expected in [antique watches or watch movements]." *Id.* And if an advertisement conveys that a watch is historic or restored, then it is therefore unlikely that substantial numbers of consumers will believe that the watch movement is unmodified.

In short, a reasonable factfinder could conclude that the vast majority of ordinarily prudent purchasers would interpret the ads as communicating that Vortic's only connection to

4

Hamilton is that it uses and restores antique Hamilton watch movements for its product. The reasonable factfinder could also conclude that the vast majority of ordinarily prudent purchaser would expect the kind of modifications used by Vortic in a historic, restored watch. Based on *Champion*, a reasonable factfinder that so concluded would find that there is not a likelihood of confusion.

Plaintiff attempts to distinguish *Champion* on two bases. First, Plaintiff appears to suggest that *Champion*'s full disclosure standard is met only if the product states "repaired" or "used." The Court does not interpret *Champion* so narrowly, instead reading it as focusing on whether "full disclosure" in some form is provided. *Id.* at 130. The Court found that a reasonable factfinder could determine that The Lancaster provides "an even more accurate picture of the product than a consumer would have received from the unpackaged sparkplugs in *Champion*." SJ Op. at 9. The Court accordingly denied summary judgment on that basis. Second, Plaintiff argues that Vortic's advertisements do not convey that the movements have been modified or restored. But as the Court previously noted, a reasonable factfinder could determine that the advertisements do just that. SJ Op. 6-7.

Plaintiff also objects to the fact that the Court applied only three of the eight *Polaroid* factors. The Second Circuit, however, has explained that a court need not apply every *Polaroid* factor in every trademark infringement case. *See Int'l Info. Sys. Sec. Certification Consortium v. Sec. Univ., LLC*, 823 F.3d 153, 160 (2d Cir. 2016). Rather "it is incumbent upon the district judge to engage in a deliberate review of each factor, and, if a factor is inapplicable to a case, to explain why." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995). The Court engaged in a deliberate review, and in this case found that application of five of the factors would have directly conflicted with the Supreme Court's rationale in *Champion*. *See* SJ Op. at 10-11. Therefore, they were "inapplicable to [the] case." *Arrow Fastener Co.*, 59 F.3d at 400.

Indeed, Plaintiff itself appears to ask this Court to effectively disregard the last *Polaroid* factor, consumer sophistication, when it states that "[i]n this case, any perceived consumer sophistication does not reduce the likelihood of confusion." Memorandum of Law in Support of the Motion for Reconsideration, Dkt. No. 117-1, at 10.

Furthermore, Plaintiff argues that the Court failed to address Plaintiff's arguments regarding downstream consumer confusion that could occur from viewing The Lancaster on its own. However, the Court explicitly discussed the possibility of consumer confusion from the watch viewed in isolation. *See* SJ Op. at 8-10. The Court concluded under *Champion* that a reasonable factfinder could determine that the watch, by itself, is unlikely to cause consumer confusion.

Finally, Plaintiff makes a number of arguments that are inappropriate for a motion for reconsideration. Plaintiff claims the Court failed to consider wording on Defendants' website that was subsequently changed after Hamilton sent a cease and desist letter. Plaintiff attaches a screenshot of the old wording to a new declaration. This is the first time that Plaintiff has provided this earlier version of the website. Plaintiff also cites to a portion of Custer's deposition, but has never provided that part of the transcript to the Court. "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court." R.*F.M.A.S., Inc. v. So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)). Plaintiff also raises arguments it previously made at the summary judgment stage regarding the applicable *Polaroid* factors and the message conveyed to consumers from Vortic's advertisements and The Lancaster itself. The Court has already evaluated these arguments. Plaintiff cannot use a motion for reconsideration "as a vehicle for relitigating issues already decided by the Court." *Id.* (quotation omitted).

## IV. CONCLUSION

For the foregoing reasons, Plainiff's motion for reconsideration is denied. In light of the upcoming trial scheduled to begin on February 19, 2020, the Court alters the schedule for pre-trial filings. *See* Dkt. No. 126. Pre-trial materials are due on January 24, 2020. Oppositions to motions *in limine*, if any, are due on February 5, 2020, and replies, if any, are due on February 11, 2020.

This resolves Dkt. No. 117.

Dated: January 10, 2020
New York, New York

_____
ALISON J. NATHAN
United States District Judge